UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 5:09-CV-406-KSF

TIFFANY MANUEL, ET AL.,                                                                        PLAINTIFF,

v.                                                    **OPINION AND ORDER**

TRADITIONAL SPORTING GOODS, INC., ET AL.,                                      DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion filed by the Defendants, Traditional Sporting Goods, Inc. ("Traditions") and Ardesa S.A. ("Ardesa")(collectively, "Defendants") [DE #51], for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Plaintiff's claims for strict liability or gross negligence. This matter is fully briefed and ripe for review.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a tragic, fatal shooting incident involving the decedent, Kevin Wayne Manuel. Early on the morning of December 20, 2008, Kevin was in his home preparing to go hunting with his father, Jimmy Manuel, and brother, Derek Manuel. After getting dressed, Kevin brought a bowl of ice cream to his wife, Tiffany, in their bedroom, removed his Traditions Tracker 209 muzzleloading rifle from his gun cabinet and laid it on the bed. He then took his rifle from the bedroom and walked out of the bedroom toward the kitchen. Next, Tiffany heard a loud shot. Somehow, Kevin's rifle had fired, striking Kevin in the head. Kevin was pronounced dead shortly thereafter.

There were no eyewitnesses to the incident, nor did Kevin ever meaningfully regain consciousness after the incident.[1]  Thus, it is not known what caused the rifle to fire.  For example, it is unknown whether the rifle fired as a result of a defect, as a result of the rifle's bolt handle getting snagged or being snapped, as a result of the rifle being dropped to the ground, or for some other unknown reason.

There is also no definitive evidence as to the condition of the rifle at the time of the incident.  Kevin had used the same rifle to go hunting with Jimmy and Derek Manuel two days before the incident.  Plaintiff's brief states that it is "uncontroverted" that, the last time Kevin's firearm was seen, it was loaded and primed [DE #52 at p.3].  Plaintiff admits that Kevin sometimes kept his rifle loaded and primed, notwithstanding the testimony from his father, Jimmy, that he instructed Kevin to always unload his rifle before putting it in his vehicle or carrying it into his house.  Plaintiff's brief also states that Kevin's rifle was uncocked the last time it was seen.  However, no witnesses were able to definitively testify that Kevin's rifle was, in fact, uncocked.  Rather, the witnesses assumed that Kevin's rifle would have been uncocked, based on Kevin's usual gun-handling practices.  For example, Kevin's brother Derek testified that he could not remember whether or not Kevin's rifle was cocked, although he assumed that it was not "because we never – never left a cocked gun" [DE #52-3 at p. 21].  Regardless of the testimony of the state of Kevin's rifle at the end of his prior hunting trip, no witnesses have been able to testify as to the state of Kevin's rifle at the time of the incident.

---

[1]Kevin's father, Jimmy Manuel, arrived at Kevin's house shortly after the incident occurred and testified that Kevin moved his eyes in response to his voice.  However, Tiffany testified that Kevin was unconscious and was never responsive to her in any way after the shooting.

2

Despite the questions regarding causation, Plaintiff filed the instant action against Defendants, alleging that Defendants negligently designed, manufactured, marketed and distributed the Traditions Tracker 209 muzzleloading rifle and that Defendants unreasonably failed to warn of the known and foreseeable hazards of the rifle.[2] Specifically, Plaintiff alleges that Defendants were grossly negligent in creating and/or allowing the following defects of the rifle to persist, as well as failing to adequately warn about these defects: (1) the lack of a secondary safety; (2) a false-stop on the rifle's thumb safety; (3) the ability of the rifle's bolt handle to snag or snap fire if the rifle's nipple is left capped and the bolt is left in the forward position resting against the live primer; and (4) the ability of the rifle to drop fire under the same conditions. Plaintiff seeks punitive damages, in addition to compensatory damages.

In Defendants' motion for summary judgment, Defendants seize on the uncertainties regarding the causation of the accident and the condition of Kevin's rifle at the time of the accident and essentially argue that, because Plaintiff has not been able to factually establish how the accident occurred, she cannot establish that any alleged defects in Kevin's rifle proximately caused the accident or were a substantial factor in bringing about Kevin's death. In addition, as her experts have conceded that Kevin's rifle may have fired with a trigger pull, Defendants argue that Plaintiff cannot prove that the accident occurred from anything other than the rifle operating as designed and intended. However, despite the fact that there were no eyewitnesses to the accident, the Court finds that Plaintiff has presented sufficient evidence that defects of the rifle proximately caused the accident to withstand summary judgment. Indeed, the evidence of the cause of the accident in this

---

[2]Plaintiff originally filed this products liability action in Lincoln Circuit Court on November 16, 2009 [DE #1]. Defendants subsequently removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332, 1441, and 1446.

3

case present issues of fact that are more appropriately resolved by a jury, not the Court. Accordingly, for the reasons explained more fully below, Defendants' motion for summary judgment is passed with respect to Plaintiff's claim for punitive damages and denied in all other respects.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to "particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). Moreover,

the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**III.    ANALYSIS**

    A.    <u>Defective Design</u>

Kentucky has adopted the *Restatement (Second) of Torts* § 402A, imposing liability upon manufacturers or sellers of products when the "design itself selected by the manufacturer amounted to a defective condition which was unreasonably dangerous.'" *Morales v. American Honda Motor Co.*, 71 F.3d 531, 536 (6th Cir.1995)(citing *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 433 (Ky.1980)). Thus, under this standard, liability will lie for "persons engaged in the business of manufacturing or selling products...if the product is in a defective condition unreasonably dangerous to the user or consumer." *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky. 1984). In applying this standard, "[t]he manufacturer is *presumed to know* the qualities and characteristics, and the actual condition of his product at the time he sells it, and the question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Id*. (quoting *Nichols*, 602 S.W.2d at 433)(emphasis in original). The Kentucky Supreme Court has set out a non-exhaustive list of factors to be taken into account in determining whether a product was manufactured "in a defective condition unreasonably dangerous," including: (1) feasibility of making a safer product; (2) patency of the danger; (3) warnings and

5

instructions; (4) subsequent maintenance and repair; (5) misuse; and (6) the product's inherently unsafe characteristics. *Montgomery Elevator Co.*, 676 S.W.2d at 780-81.

Once a plaintiff proves the product is a defective design, unreasonably dangerous, the plaintiff must also establish causation under the substantial factor test. *See King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000). Under this test, the plaintiff must prove:

> that the defendant's conduct was a substantial factor in bringing about plaintiff's harm. Plaintiff may use circumstantial evidence, and in that situation, the evidence must be sufficient to tilt the balance from possibility to probability.

*Id.*(quotations omitted)(internal citations omitted). Thus, under Kentucky law, the burden of proof is on Plaintiff to show that the circumstances surrounding the accident were such as to justify a reasonable inference of probability, rather than a mere possibility, that Defendants were responsible for Kevin's accident. *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 219 (6th Cir. 1982). However, "[g]enerally, under Kentucky law, proximate cause is a question of fact for a jury." *Morales*, 71 F.3d at 537 (citations omitted).

Here, Defendants' motion focuses on Plaintiff's alleged inability to produce evidence of the cause of the accident. Defendants argue that "because Plaintiff is unable to establish how the incident factually occurred, including what state the rifle was in, how it was being handled by [Kevin], and what [Kevin] was doing at the time of incident, she cannot establish that any alleged defect or failure to warn was a substantial factual or proximate cause of the incident" [DE #51-1 at 16-17]. According to Defendants, Plaintiff does not have evidence that is sufficient to support a reasonable inference that any alleged defect of the rifle was the "probable" cause of the accident, as opposed to a "possible" cause among other possibilities. Thus, a jury verdict in Plaintiff's favor

6

would be based upon speculation or surmise, which is inappropriate under Kentucky law. *See Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745, 747 (Ky. 1973).

Defendants focus on the testimony of Plaintiff's two firearm design experts, Randy Wakeman and William Conrad. Wakeman opined that the design of the rifle was defective in that: (1) the rifle's two position thumb safety is defective because it contains a false stop in the middle of the "safe" and "fire" positions, potentially allowing a user to think the safety was engaged when it actually was not; (2) it lacks a secondary safety feature; and (3) the bolt handle on the rifle could get snagged on the user's pants or some other object. Conrad opined that: (1) the rifle is defective because he was able to get the rifle in question to fire by dropping it on its buttstock with the bolt forward and by snapping the bolt back about a quarter or half an inch when it was in the forward position; and (2) the rifle should have a locking bolt safety to prevent the bolt from moving forward accidentally if it slipped off the sear (which holds the rifle in the cocked position).

However, according to Defendants, Conrad and Wakeman's testimony should be disregarded, as they have admitted that they can do nothing more than speculate as to the cause of the incident and the condition of the rifle at the time of the incident. For example, according to Defendants, Wakeman rendered his opinions in this case under the assumption that the rifle's bolt was not fully cocked at the time of the incident. Wakeman based this assumption on the testimony of some of Kevin's family members as to their thoughts regarding the rifle's condition, but conceded that there were no eyewitnesses to the incident. Further, Defendants state that Wakeman conceded that his opinions as to the alleged defect in the rifle's two position thumb safety is only implicated if the rifle's bolt was cocked at the time of the incident, which, according to Defendants, Wakeman did not believe to be the case.

Defendants argue that, since no witnesses have been able to definitively testify as to the condition of Kevin's rifle at the time of the incident, including whether the rifle was cocked or uncocked, Plaintiff's experts' theories are based purely on speculation and should be disregarded. However, although dismissed by Defendants, Plaintiff has offered evidence regarding whether the rifle was cocked or uncocked at the time of the incident - namely, the testimony regarding Kevin's habitual gun-handling practices. Under Rule 406 of the Federal Rules of Evidence, "[e]vidence of a person's habit...may be admitted to prove that on a particular occasion the person...acted in accordance with the habit...The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." Thus, Plaintiff's experts' theories are not based on "speculation" that Kevin's rifle was uncocked, but on the testimony of those who often hunted with Kevin regarding his habitual gun-handling practices. Although an eyewitness who noted the condition of Kevin's rifle immediately prior to the incident would certainly be more helpful, at this stage, Plaintiff must only present evidence that, if believed, is such that a reasonable jury could return a verdict in her favor. *Morales*, 71 F.3d at 536. Here, Plaintiff has presented evidence that Kevin's rifle was loaded, primed and uncocked at the time of the incident. Further, Plaintiff has also presented evidence from her experts that it is possible for a loaded, primed Traditions Tracker 209 muzzleloading rifle to discharge in an uncocked condition, without a trigger pull, whether the rifle was dropped, snagged or discharged by snap-fire. Importantly, as this is a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in Plaintiff's favor.

In addition, contrary to Defendants' arguments, Plaintiff has pointed to evidence eliminating other possible causes of the accident. For example, although Defendants criticize Plaintiff's failure to show that the accident did not result from a trigger pull, Plaintiff has cited to evidence from the

8

investigating Kentucky State Trooper, Trooper Eric Taylor, and the Lincoln County Coroner, Bill Demrow, that suicide was eliminated as a cause of the shooting. Kevin was recently married, employed, had not exhibited signs of depression, apparently had strong ties to his family and had a child on the way. Plaintiff has also cited to physical evidence, namely the burn marks on Kevin's hand, indicating that his hand was touching the muzzle when the firearm discharged. According to Plaintiff, this evidence demonstrates that Kevin would have been unable to physically reach the trigger.

Moreover, the Court is not swayed by Defendants' characterization of the multiple "concessions" made by Plaintiff's forensic firearms expert Conrad and Plaintiff's muzzleloader expert Wakeman. Essentially, Defendant urges the Court to disregard the testimony of these experts because they admitted that the cause of the incident and the condition of the rifle were unknown. However, despite these concessions, both Conrad and Wakeman's testimony is based on what is known about the likely state of the rifle based on the testimony from Kevin's family members regarding his habitual gun-hunting practices. It is for the jury to determine how the accident happened (i.e., whether the rifle was dropped, snagged or snap-fired) and the condition of the rifle at the time (i.e., whether the rifle was cocked or uncocked). The resolution of any conflicts in the testimony of Plaintiff's experts is, likewise, for the jury to consider in making their determination. Defendant also dismisses Plaintiff's experts for presenting alternative theories regarding the defects that may have been a substantial factor in causing the accident. For example, Defendants point out that one of Wakeman's defect theories is only implicated if the rifle was cocked at the time of the accident, while the other two are only implicated if the rifle was uncocked. However, as it will be

up to the jury to determine whether the rifle was cocked or uncocked, Plaintiff is permitted to present alternative theories as to the design defect that was the probable cause of the incident.

Thus, the evidence presented by Plaintiff, though circumstantial, is sufficient to present to a jury for a determination as to whether the alleged design defects proximately caused Kevin's death. As in *Morales*, "[t]his is a case in which a jury - and not the trial judge - should make the determination, after hearing all of the evidence," as to whether the alleged design defects identified by Plaintiff were a substantial factor in contributing to the cause of Kevin's accident. *Morales*, 71 F.3d at 538.

      B.      <u>Failure to Warn</u>

Under Kentucky law, in order to survive summary judgment on her failure to warn claim, Plaintiff must provide evidence that: (1) Defendants had a duty to warn; (2) the warnings Defendants gave were inadequate; and (3) the inadequate warnings were the proximate cause of the plaintiff's injuries. *Stewart v. General Motors*, 102 Fed.Appx 961, 964 (6th Cir., June 25, 2004)(unpublished). Under Kentucky law, "a warning must be fair and adequate, to the end that the [product] user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." *Post v. American Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky. 1968); *see also King*, 209 F.3d at 895 (6th Cir. 2000). "Kentucky law imposes a general duty on manufacturers and suppliers to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990).

Here, Defendants again focus on Plaintiff's ability to prove that Defendants' failure to provide adequate warnings proximately caused Kevin's death. Defendants specifically urge the

10

Court to disregard Plaintiff's experts' opinions that Defendants failed to provide adequate warnings that the rifle could fire with the bolt uncocked on a live primer. Defendants argue that, since Plaintiff cannot factually establish that the rifle was in an uncocked position on a live primer when the accident occurred, and cannot establish Kevin's knowledge of the alleged dangers of keeping his rifle in this position, she cannot establish that Defendants' failure to warn of the dangers of keeping a rifle in this position proximately caused Kevin's death. However, as noted above, Plaintiff has presented evidence of the condition of Kevin's rifle at the time of the incident based on his habitual gun-handling practices. Although perhaps thin, this evidence, if believed, would be sufficient for a reasonable jury to infer that Kevin's rifle was uncocked on a live primer at the time of the incident. Even if Kevin's storage of his rifle in this manner was a misuse of the rifle, as noted above, "[u]nder Kentucky law, the duty to warn extends to the dangers likely to result from foreseeable misuse of a product." *Morales*, 71 F.3d at 537 (citing *Post*, 437 S.W.2d at 521). In addition, Plaintiff has pointed to testimony of his frequent hunting companions - his father and his brother - about Kevin's knowledge of gun safety.

Defendants further argue that, since Kevin apparently stored his rifle without unloading it and/or removing the primer (ignoring specific instructions in the instruction manual), and otherwise generally ignored "multiple warnings that would have prevented the incident if followed,"[3] it cannot be shown that Kevin would have adhered to any additional warnings or instructions or acted any differently in response to them. However, "in the absence of an adequate warning, the defendant cannot shift to the plaintiff the burden of proving that he would not have misused the product

---

[3] Defendants do not specify other particular warnings or instructions that they contend would have prevented Kevin's accident, if followed.

11

regardless." *Id*. (quoting *Post*, 437 S.W.2d at 521)("[i]t is no answer to say that appellant would have attached the machine to a 220 DC outlet anyway, since he did so in face of the directions which were furnished."). Rather, "the fact that reasonable minds could differ as to the adequacy of the warnings [makes] the issue of negligence a jury question." *Id*. (citing *Post*, 437 S.W.2d at 521). Here, Plaintiff points to a study by her retained human factors expert, Dr. Shaun Stafford, indicating that, after reviewing instruction manuals from the Traditions Tracker 209 and the Traditions Vortek muzzleloaders,[4] individuals with experience in hunting and, more specifically hunting with muzzleloaders, felt that uncocking the Tracker 209 onto a live primer made it just as safe as similarly uncocking the Vortek. This evidence, coupled with the testimony from Kevin's hunting companions regarding Kevin's gun-safety knowledge, is sufficient to create a genuine issue of material fact as to the adequacy of Defendants' warnings. The jury may permissibly conclude that Kevin was not aware that his rifle, though loaded with a live primer, could still fire, even if it was uncocked. Thus, Defendants' motion for summary judgment on these grounds is denied.

      C.     Gross Negligence/Punitive Damages

Defendants also argue that, because Plaintiff cannot establish any factual basis for the accident, she cannot establish the existence of any "gross negligence" or that any alleged gross negligence caused the accident. Accordingly, Defendants argue that Plaintiff's gross negligence and dependent punitive damages claim should also be dismissed. This portion of Defendants motion is passed until the Pre-Trial Conference, scheduled for December 15, 2011. Arguments will be heard from counsel on this issue at that time.

---

[4] According to Plaintiff, unlike the Traditions Tracker 209, the Traditions Vortek has a secondary safety mechanism and will not fire when the rifle is in an uncocked state.

12

D.      Spoliation

Defendants further argue that they are entitled to summary judgment as a result of alleged "spoliation" of the incident primer. According to Defendant, the incident primer was in existence after the incident and was examined by Plaintiff's expert Conrad. However, at some point after being examined by Conrad and shipped back to Plaintiff's counsel, the primer disappeared and/or was lost or destroyed. Defendants argue that the loss of the incident primer is unduly prejudicial to Defendants because their experts were unable to examine the primer to possibly determine how the incident occurred. Defendants point to testimony from their expert, Lucien Haag, that he was able to decipher between a primer that was fired when the rifle was in the fully cocked position and a primer that was fired when the rifle was fired by cocking the bolt a quarter of an inch, simulating a snag or snap fire. However, since the incident primer was missing, Haag was not able to examine it to determine whether the accident was a result of a trigger pull or another event. Thus, Defendants argue that the loss of the incident primer deprived them from evidence that could establish the cause of the incident. Accordingly, Plaintiff's complaint should be dismissed or Defendants are entitled to an inference that an examination of the incident primer would have been favorable to their defense.

Pursuant to a court's "inherent power to control the judicial process," the Court may impose sanctions against a party for spoliation of evidence that serve both fairness and punitive functions. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009)(citations omitted). "Because failures to produce relevant evidence fall 'along a continuum of fault - ranging from innocence through the degrees of negligence to intentionality,' the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id*. at 652-653 (quoting *Welsh v. United States*, 844 F.2d 1239,

13

1246 (6th Cir. 1988)). A district court has broad discretion to determine an appropriate sanction for spoliation, given the facts and circumstances of a particular case. *Id*. at 653.

Defendants cite to *Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d 546, 553 n.1 (6th Cir. 1994), for the proposition that summary judgment may be granted "if the district court determines that the defendant is entitled to judgment as a matter of law because the plaintiff is unable, due to the unavailability of the evidence and the negative inferences, to offer evidence sufficient to support its case." However, the *Beil* case further instructs:

> The unavailability of evidence due to the plaintiff's pre-litigation destruction and the corresponding negative inferences, however, do not *necessarily* mandate dismissing the case or granting summary judgment. Cases are often tried even though a crucial piece of evidence is unavailable. The plaintiff must then rely on other sources of proof to establish what might more easily have been proved if the missing evidence was available. In a product liability case based on a design defect, the plaintiff could demonstrate through expert testimony, without the availability of the specific product, that the product's design was defective; and therefore, each product, including the unavailable product, was defective.

*Id*. at 553 (emphasis in original).

In this case, Defendants' motion for summary judgment does not present sufficient cause to justify the extreme sanction of summary judgment in their favor as a result of Plaintiff's alleged spoliation of evidence. Defendants put forth no evidence that Plaintiff's counsel or Plaintiff's expert Conrad intentionally destroyed or concealed the incident primer. In fact, Plaintiff's response suggests that it is possible that the primer examined by Conrad was not the incident primer and that, instead, the incident primer was possibly discarded by the police investigating the accident.[5]

---

[5] Defendants' Reply argues that, in his deposition, Conrad admitted to receiving the incident primer when he received the rifle. However, a review of Conrad's deposition shows that he stated that a primer was in the rifle when he received it in September 2009. He never definitively identifies the primer he received as the incident primer.

14

Regardless, there does not appear to be any intentional, bad faith conduct that would justify the extreme sanction of dismissal. Although any alleged "spoliation" may be the basis for an adverse inference instruction, this issue is more appropriately considered by the Court on Defendants' separate motion for such an instruction [DE #69]. Accordingly, this issue will be taken up by the Court at that time.

IV.     CONCLUSION

For the reasons set forth below, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Defendants' motion for summary judgment [DE #51] is passed with respect to Plaintiff's claim for punitive damages, but is **DENIED** in all other respects; and

(2) this matter **REMAINS PENDING**.

This December 7, 2011.



**Signed By:**

*Karl S. Forester*  *KSF*

**United States Senior Judge**